# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAVAR ARMSTRONG,<br>          Plaintiff, | CIVIL ACTION |
| v. | |
| UNKNOWN OFFICERS and<br>THE CITY OF CHESTER,<br>          Defendants. | NO. 20-160 |

DuBois, J.                                                                                                                                                                           March 12, 2020

## **M E M O R A N D U M**

### I. INTRODUCTION

This civil rights case arises out of an alleged encounter between plaintiff Lavar Armstrong and multiple unidentified Chester Police Department officers ("Unknown Officers") on January 19, 2018. Plaintiff asserts claims under 42 U.S.C. § 1983 and state law against the Unknown Officers. Plaintiff also asserts *Monell* claims under § 1983 for failure to train, supervise, and discipline against the City of Chester, Pennsylvania ("the City").

Presently before the Court is the City's motion to dismiss for failure to state a claim. For the reasons that follow, the motion is granted. The Court dismisses Count II of the Complaint against the City without prejudice to plaintiff's right to file an amended complaint with respect to his claims in Count II within twenty days, if warranted by the facts and applicable law.

### II. BACKGROUND

The facts summarized below are drawn from plaintiff's Complaint. The Court construes that complaint in the light most favorable to the plaintiff, as it must in ruling on a motion to dismiss.

On January 19, 2018 plaintiff visited a friend's apartment located in the City of Chester.

Compl. ¶ 11. Although the friend was not home, the friend's family members permitted plaintiff to enter the apartment to use the bathroom. *Id.* ¶ 12–13. While plaintiff was in the bathroom, multiple Chester Police Department officers—the Unknown Officers—entered the apartment. *Id.* ¶ 14. After hearing the Unknown Officers enter the apartment, plaintiff began to exit the bathroom with his arms raised. *Id.* ¶ 15. As plaintiff walked through the bathroom doorway, one of the Unknown Officers hit him in the head with a SWAT shield. *Id.* ¶¶ 15–16. The impact of the shield caused plaintiff to fall backwards into the bathtub and hit his head on the tub. *Id.* ¶ 16. Plaintiff alleges that the Unknown Officers then pulled him from the tub to the floor, shot him with a taser, and kicked him in the head and back. *Id.* ¶ 17–18. At that point, plaintiff claims he began to lose consciousness. *Id.* ¶ 19. The Unknown Officers then handcuffed plaintiff and dragged him down the stairs, where they left him on a couch. *Id.* ¶ 20. Plaintiff asked the Unknown Officers to drive him to the hospital, but they refused and "abruptly left" the apartment. *Id.* ¶ 21–22. Plaintiff's girlfriend later drove him to the hospital, where he was diagnosed with a "closed displaced left orbital floor fracture and fracture of the medial aspect of the left orbit." *Id.* ¶ 23. Plaintiff was eventually diagnosed with additional injuries to his head and spine. *Id.* ¶ 24.

Plaintiff filed a citizen's complaint with the Police Department on February 9, 2018 and never received a response. *Id.* ¶ 25. He filed the Complaint in this action on January 9, 2020. The Complaint contains four counts: Count I sets forth claims against the Unknown Officers under § 1983 for use of excessive force, false detention, false arrest, and false imprisonment in violation of plaintiff's rights under the Fourth Amendment; Count II sets forth claims against the City under § 1983 for failure to train, supervise, and discipline; Count III sets forth a claim against the Unknown Officers under state law for assault and battery; and Count IV sets forth a

2

claim against the Unknown Officers under state law for intentional infliction of emotional distress.

On January 28, 2020 the City filed its motion to dismiss Count II of the Complaint (Document No. 3), asserting that plaintiff has failed to state a claim for municipal liability under Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded on February 12, 2020 (Document No. 4). The City replied on February 20, 2020 (Document No. 5). The motion is thus ripe for decision.

## III. LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Twombly*, 550 U.S. at 557, 564. Such conclusory allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*,

605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Nevertheless, a court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

**IV. DISCUSSION**

The Court concludes that plaintiff has failed to allege sufficient facts to state plausible claims of municipal liability against the City for failure to train, supervise, and discipline under § 1983.

Claims for § 1983 liability against a municipality are governed by the Supreme Court decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). To establish *Monell* liability, a plaintiff must demonstrate (1) a constitutional violation by a municipal actor that (2) was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (noting the "two-path track" to municipal liability premised on municipal policy or municipal custom). A policy is established when a decisionmaker with final authority "issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). In contrast, a custom can be established by showing that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff alleging municipal

4

liability under § 1983 must "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009)

A municipality's failure to train, supervise, or discipline its police force may be "properly thought of as a city 'policy or custom' that is actionable under § 1983" only where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989); *see Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 418 (1997)) ("[T]he need to take some action to control the agents of the government [must be] . . . 'so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'").

In the Third Circuit, a plaintiff sufficiently pleads deliberate indifference for failure to train, supervise, or discipline "by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, n.7 (3d Cir. 2019) (quoting *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)). In cases such as this, where the plaintiff alleges a municipality's failure to act, a "pattern of similar constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiff sets forth three allegations in support of his *Monell* claim. First, he alleges that the City and Police Department, "as a matter of policy and practice failed to discipline, train, supervise or otherwise sanction [the] Unknown Officers who have violated the rights of citizens

5

by choking citizens, including the plaintiff[], thus encouraging defendant Unknown [O]fficers in this case to engage in assaulting citizens of the City of Chester." Compl. ¶ 33.  Second, plaintiff asserts that the City and Police Department "as a further matter of policy and practice failed to train properly [the] Unknown Officers, with respect to the constitutional, statutory and departmental limits of their authority including refraining from assaulting citizens of the City of Chester by choking." *Id.* ¶ 34.  Finally, plaintiff alleges that the City and Police Department "were on actual notice of a need to train, supervise, discipline or terminate defendant [U]nknown [O]fficers" because "other similar incidents of choking citizens have occurred in the past involving defendant Unknown [O]fficers." *Id.* ¶ 35.[1]

The Court dismisses plaintiff's *Monell* count because he has failed to sufficiently allege deliberate indifference by the City.  Significantly, the Complaint does not identify a specific form of training, supervision, or discipline whose absence had "a causal nexus" with plaintiff's injuries and "can be reasonably said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).  To the contrary, plaintiff's assertions regarding the City's failure to train, supervise, and discipline are merely formulaic recitations of the elements of a *Monell* claim, unsupported by any factual allegations in the Complaint.  Such assertions do not meet the Rule 12(b)(6) pleading standard.  *See, e.g.*, *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014); *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1117 (3d Cir. 1988) ("Mere conclusory allegations . . . that the defendant[] deliberately elected not to train are not enough to support a constitutional claim.").  Moreover, complaints alleging nearly verbatim formulations of plaintiff's *Monell* claims in this case have been dismissed on the same grounds by at least two other courts in this District.  *See*

---

[1] Despite these references to choking in Count II, the Complaint fails to state that plaintiff was choked by the Unknown Officers during their encounter on January 19, 2018.

*Jacobs v. Palmer*, No. CIV.A. 14-5797, 2015 WL 1033294, at *5 (E.D. Pa. Mar. 10, 2015); *Mirra v. Fynes*, No. CIV.A. 13-1677, 2014 WL 716692, at *6 (E.D. Pa. Feb. 25, 2014).

Importantly, the Complaint contains factual allegations that relate to only one incident, plaintiff's January 19, 2018 encounter with the Unknown Officers. In the absence of a pattern of misconduct, the burden to show deliberate indifference for failure to train is "high" because the plaintiff must show that "a violation of federal rights [was] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 265 (3d Cir. 2010) (internal citation and quotation marks omitted). Plaintiff has failed to make such a showing in this case.

In response to the City's motion to dismiss, plaintiff contends, *inter alia*, that the Complaint satisfies the Rule 12(b)(6) standard for claims asserting supervisory liability against individual defendants. *See* Pl.'s Resp. 9–15. Such arguments are rejected because Count II of the Complaint asserts a theory of § 1983 liability against a municipality, not individuals. *See, e.g., A.M. ex rel. J.M.K v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (summarizing the theories allowing a supervisory officer to be held personally liable for his or her own conduct).

The Court thus dismisses plaintiff's claims in Count II of the Complaint against the City. The dismissal is without prejudice to plaintiff's right to file an amended complaint on the ground that the Court concludes that such amendment of plaintiff's Complaint would not be futile or inequitable.

## V.    CONCLUSION

For the foregoing reasons, the Court dismisses Count II of the Complaint against the City without prejudice to plaintiff's right to file an amended complaint with respect to his claims in

Count II within twenty days, if warranted by the facts and applicable law. Counts I, III, and IV of the Complaint are unaffected by this Memorandum. An appropriate order follows.