IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAVAR ARMSTRONG,

               Plaintiff,

    v.

CAPTAIN JOHN GRETSKY, et al.,

               Defendants.

CIVIL ACTION
NO. 20-160

## OPINION

Slomsky, J.                                                                    April 11, 2023

## I.    INTRODUCTION

On January 9, 2020, Plaintiff Lavar Armstrong filed a Complaint against the City of Chester and Unknown Officers, alleging Fourth Amendment violations under 42 U.S.C. § 1983 ("Section 1983") (Count I), and Pennsylvania state law claims of assault and battery (Count II), and intentional infliction of emotional distress (Count III).  On June 12, 2020, Plaintiff filed an Amended Complaint.[1]

---

[1] On March 12, 2020, the Honorable Jan E. DuBois, to whom this case was originally assigned, dismissed the City of Chester as a Defendant in this case (Doc. Nos. 6 and 7) and granted Plaintiff leave to file an amended complaint as to the City of Chester within 20 days.  On June 12, 2020, Plaintiff filed his First Amended Complaint and did not name the City of Chester as a Defendant. (Doc. No. 9.)  In the Amended Complaint, Plaintiff named the following officers as Defendants: Captain John Gretsky, Officer William Murphy, Officer John Benozich, Officer Timothy Garron, Officer Marc Barag, Officer Bradley Waltman, Task Force Officers ("TFO") Gerard Scanlan and John Montgomery, and Criminal Investigation Division ("CID") Detective Mike Honicker.  (Id.) On September 19, 2022, by agreement of the parties, the Court dismissed as Defendants in this case Captain John Gretsky, Officer William Murphy, Officer Timothy Garron, Officer Marc Barag and Officer Bradley Waltman.  (Doc. No. 68.)  Thus, the remaining Defendants are: 1) John Benozich; 2) Gerard Scanlan; 3) John Montgomery; and 4) Mike Honicker.

On the date of the alleged incident and at all relevant times, Defendant Benozich was employed by the City of Chester Police Department as a Patrolman and participated in the execution of the search warrant that led to the incident in this case.  (Doc. No. 41 ¶ 6.)  Defendants Scanlan,

The claims arise from an incident that occurred while Plaintiff was visiting an apartment in Chester, Pennsylvania on January 19, 2018.  After he arrived at the apartment, a search warrant was executed by Defendants.  He claims, among other things, that Defendants used excessive force against him, and as a result filed the instant Complaint.  (Doc. No. 9.)

This case was originally assigned to the Honorable Jan E. DuBois, a Judge of the United States District Court for the Eastern District of Pennsylvania, who on January 7, 2021 denied the Motion to Dismiss filed by Defendant John Benozich.  (Doc. No. 25.)  Defendants Scanlan, Montgomery and Honicker did not file a Motion to Dismiss.  On February 26, 2021, this case was transferred to the Honorable Joel H. Slomsky (Doc. No. 27), and on September 15, 2021, a new Scheduling Order was entered (Doc. No. 37).

Before the Court are Motions for Summary Judgment filed by the remaining individual Defendants: Benozich (Doc. No. 42), and Scanlan, Montgomery and Honicker (Doc. No. 40).  They make numerous arguments as to why their Motions should be granted.  Several are meritorious.  First, the Fourth Amendment claims of false detention, false imprisonment and false arrest will be dismissed because there are no genuine disputes of material fact that Plaintiff has not

---

Montgomery, and Honicker were members of the Delaware County Task Force and periodically assisted the City of Chester.  Defendant Scanlan was employed as a detective with Ridley Township Police Department.  (Doc. No. 40 ¶ 52.)  Defendant Scanlan, through his employment with the Ridley Township Police Department, was assigned to the Delaware County Task Force and assisted the City of Chester officers in the execution of the search warrant.  (Id. ¶¶ 52, 54.)  Defendant Montgomery was employed as a detective with the Upper Chichester Police Department, also assigned to the Delaware County Task Force and assisted the City of Chester officers two or three times a week, including in the execution of the search warrant.  (Id. ¶¶ 67-68.)  Defendant Honicker was employed by the County of Delaware Criminal Investigation Division and was assisting the City of Chester officers on the date of the incident.  (Id. ¶¶ 77-78.)

established the elements of those claims.  Second, the two-year statute of limitations for both the Section 1983 Fourth Amendment claims and state law claims was violated.

On the other hand, there are genuine disputes of material fact on the claims of excessive force, assault and battery, and intentional infliction of emotional distress.  These claims would survive a Motion for Summary Judgment but for the fact that they were brought in violation of the two-year statute of limitations.  Thus, for reasons that follow, Defendants' Motions for Summary Judgment (Doc. Nos. 40, 42) will be granted.[2]

## II.   BACKGROUND

### A.   The Incident[3]

The alleged incident occurred while the four Defendants were executing a search warrant on January 19, 2018 at 1300 Crosby Street, Apartment 61, Chester, Pennsylvania ("the Apartment") in Delaware County.  (See Doc. No. 40, Ex. DSMH7.)  Plaintiff Lavar Armstrong was inside the Apartment with two women: Nakita and Markita Seals.  (Id. ¶¶ 2, 4.)  He did not reside there, but was visiting a friend and was upstairs in the bathroom when the search warrant was executed.  (Id. ¶ 5.)

The Apartment has two floors.  (Id. ¶ 23.)  The upper floor has two bedrooms and a bathroom.  (Id.)  The bathroom is located between the two bedrooms.  (Id. ¶ 38.)  When police entered the Apartment, Plaintiff was in the bathroom located on the second floor.  (Id. ¶¶ 3.)

---

[2] Responses to the Motions and Replies also were filed by the parties.  (See Doc. Nos. 43, 44, 45, 46.)  After a hearing on the Motions for Summary Judgment was held on September 16, 2022, the parties filed supplemental memoranda in support of or in opposition to the Motions.  (See Doc. Nos. 75, 76, 77, 78.)  Moving Defendants also filed Statements of Undisputed Facts.  (Doc. Nos. 40, 41.)

[3] The facts are set forth in the light most favorable to the Plaintiff as the non-moving party.

Before executing a search warrant at premises such as the Apartment, City of Chester officers would form a "stack" or a line of officers.  (Id. ¶¶ 55-56.)  The first officer to enter the home would typically hold a shield.  (Id. ¶¶ 56, 78.)  Other officers would follow the first officer into the home.  (Id. ¶ 57.)  Entry was a quick and dynamic act.  (Id. ¶ 70.)

On the date of the incident, Defendant John Benozich entered the apartment as the "point" person carrying the shield.  (Doc. No. 41 ¶ 43.)  After entry, he proceeded up the stairs to the second floor.  (Id. ¶ 44.)  Defendant Scanlan followed Benozich in the middle of the stack and first "cleared" one of the upstairs bedrooms to make sure it was not occupied.  (Doc. No. 40 ¶ 58.)

While in the bathroom, Plaintiff heard the "raid" occurring.  (Id. ¶ 6.)  He heard the first floor entry door break down and loud statements "police, police."  (Id.)  When he heard the noise downstairs, he had just finished using the toilet.  (Id. ¶ 7.)  Believing that the police would come up the stairs to search, he put his hands up in a surrender position and waited for police to approach the bathroom.  (Id.)  At this time, Plaintiff was standing inside the bathroom about four (4) feet from the door.  (Id. ¶ 8.)  One of the women in the apartment, Nakita Seals, heard Plaintiff say that he had his hands up.  (Id. ¶ 32.)

While Plaintiff was standing in the bathroom, the door burst open, and the officers entered. The first officer who entered with the shield, Benozich, knocked Plaintiff backwards into the bathtub, causing him to hit his head.  (Id. ¶ 9; Doc. No. 41 ¶ 24.)  While Plaintiff was in the bathtub, two or three other officers entered the bathroom.  They pulled him up out of the tub and threw him on the ground.  (Doc. No. 40 ¶ 10; Doc. No. 41 ¶ 25.)  Officer Benozich, who entered the bathroom with the shield, dropped it and pinned Plaintiff to the floor.  (Doc. No. 40 ¶ 12; Doc. No. 41 ¶ 26.) At this point, Plaintiff was laying on the ground with his head in the doorway of the bathroom. (Doc. No. 40 ¶ 13.)  Thereafter, Defendants Scanlan and Honicker entered the bathroom because

they heard a commotion.  (Id. ¶¶ 58, 82.)  Defendant Scanlan saw a struggle between Plaintiff and another officer.  (Id. ¶ 58.)

While Plaintiff was on the ground, an officer put a knee on his back and another kicked him in the face.  (Id. ¶ 14.)  Around this time, officers were repeating "show me your hands," trying to take Plaintiff into custody.  (Id. ¶ 70.)  Defendant Scanlan assisted the officers as they tried to place handcuffs on Plaintiff.  (Id. ¶¶ 59, 61.)  Detective Honicker then tased Plaintiff for two seconds in the back near his right shoulder because Plaintiff allegedly failed to cooperate and tried to push himself off the floor.  (Id. ¶¶ 83, 86-87, 89.)  During this time, officers kept yelling "stop resisting, stop resisting."  (Id. ¶ 14.)  Defendant Montgomery observed Plaintiff on the floor after the taser was deployed to immobilize him.  (Id. ¶¶ 71, 75.)

Plaintiff was handcuffed, taken to the downstairs floor of the Apartment and placed on the couch.  (Id. ¶ 16.)  At that point, Plaintiff's clothes and hands were wet.  (Id. ¶ 64.)  The two women in the Apartment at the time, Nakita and Markita Seals, were seated also on the couch handcuffed.  (Id. ¶ 17.)  While the three were seated, officers searched the apartment.  (Doc. No. 41 ¶ 30.)  The search took less than one hour.  (Id. ¶ 31.)  Plaintiff's handcuffs were removed when the search was completed, and he was not arrested.  (Id. ¶¶ 32-33.)

Plaintiff asked Defendants to take him to the hospital, but they did not do so.  (Doc. No. 44 at 4.)  After Defendants left the Apartment, Plaintiff's girlfriend drove him to the hospital where he was diagnosed with a closed displaced left orbital floor fracture and a fracture of the medial aspect of the left orbit, among other injuries.  (Id.)  On August 16, 2018, Plaintiff was diagnosed with Posttraumatic Stress Disorder.  (Id.)

Plaintiff cannot identify by name any of the officers who confronted him during the incident, nor can he describe their appearance.  (Doc. No. 40 ¶ 18.)  The officers did not know the

identity of the individual behind the bathroom door before entering the apartment to execute the search warrant.  (Id. ¶ 19.)

**B.      Procedural History and Service of Process**

Since a critical issue in this case is whether the filing of the Amended Complaint in which the remaining individual Defendants were first named as Defendants violated the statute of limitations, it is necessary to describe the sequence of events that brought them into this case.  As noted above, on January 9, 2020, Plaintiff filed this action against Defendants City of Chester.  He named as Defendants the City of Chester and Unknown Officers, asserting constitutional and state law claims arising from the encounter on January 19, 2018.  (Doc. No. 9 ¶ 11.)  On March 12, 2020, Defendant City of Chester was dismissed from this litigation by Judge DuBois.  (Doc. Nos. 6 and 7.)  On June 12, 2020, Plaintiff filed the First Amended Complaint identifying the Unknown Officers as Chester Defendants Captain John Gretsky, Officer William Murphy, Officer John Benozich, Officer Timothy Garron, Officer Marc Barag, Officer Bradley Waltman, and Task Force Defendants Scanlan, Montgomery and Criminal Investigation Division ("CID") Detective Honicker.  (Doc. No. 9.)

On September 9, 2020, Summonses were issued as to all Defendants.  On September 15, 2020, Defendant Benozich first became aware that a suit was filed regarding the incident on January 9, 2018 and that he was named as a defendant.  (Doc. No. 41 ¶ 8.)  He was served with the Complaint and Summons sometime after September 9, 2020, although the exact date is not specified in the record.[4]  Plaintiff, however, failed to serve Defendants Scanlan, Montgomery and Honicker.  (See Doc. No. 14.)  On November 23, 2020, this Court ordered Plaintiff to show cause as to why he failed to serve the Amended Complaint and Summonses on Defendants Scanlan,

---

[4] Service of the Amended Complaint and Summons apparently was made on Defendant City of Chester, which was dismissed as a Defendant in this case by Judge DuBois.  (Doc. No. 2.)

Montgomery and Honicker (Doc. No. 14), and Plaintiff responded on December 7, 2020, stating in pertinent part that: 1) the identities of the officer Defendants were not disclosed to him until a few days before the deadline to file an Amended Complaint; 2) he assumed counsel for the City of Chester would represent these three Defendants; and 3) the COVID-19 pandemic caused issues regarding service. (Doc. No. 16.)

On February 23, 2021, Plaintiff filed a Praecipe to Reissue Summons to Defendants Scanlan, Montgomery and Honicker. (Doc. No. 26.) On February 26, 2021 the Summonses were reissued, and on March 16, 2021 they were returned executed as served on Defendants Scanlan, Montgomery and Honicker. (Doc. Nos. 29, 30.) Defendants Scanlan, Montgomery and Honicker were served at the Delaware County Courthouse, 201 W. Front Street, Media, Pennsylvania. (Doc. Nos. 29, 30.) The affidavits of service (Doc. No. 40, Ex. DSMH8) show that the Summonses were left in the hands of an Office Administrator at the County on March 16, 2021. (See id.) The date of purported service on Defendants Scanlan, Montgomery and Honicker, March 16, 2021, was thirty-eight (38) months after the January 19, 2018 alleged incident, and over nine (9) months after Plaintiff filed the Amended Complaint on June 12, 2020 identifying the four remaining Defendants for the first time. (Doc. No. 40 at 2.) Therefore, as noted, Defendants filed Motions for Summary Judgment, raising, inter alia, the violation of the two-year statute of limitations. (Doc. Nos. 40, 42.)

## III.    STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party

is entitled to judgment as a matter of law." Hart v. Elec. Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  "A dispute 'is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.'" Moody v. Atl. City Bd. of Educ. 870 F.3d 206, 213 (3d Cir. 2017) (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).  A disputed fact "is material only if it might affect the outcome of the suit under governing law." Id.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Meditz v. City of Newark, 658 F.3d 364, 369 (3d Cir. 2011) (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–249.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

## IV.    ANALYSIS

Defendants assert that summary judgment should be granted on Plaintiff's claims under Section 1983 for false detention, false arrest, false imprisonment, and use of excessive force (Count I), assault and battery under Pennsylvania state law (Count II), and intentional infliction of emotional distress under Pennsylvania state law (Count III).  Plaintiff submits, however, that he

has established these claims.  The Court agrees that Plaintiff has established claims for use of excessive force under Section 1983 (Count I), assault and battery under Pennsylvania law (Count II), and intentional infliction of emotional distress under Pennsylvania law (Count III).  Plaintiff, however, has not established the claims of false detention, false arrest, or false imprisonment under Section 1983 (Count I) under the Summary Judgment standard.

Moreover, it is undisputed that the Amended Complaint was filed on June 12, 2020 naming the remaining individual Defendants, Benozich, Scanlan, Montgomery and Honicker.  It was filed after the two-year statute of limitations had lapsed.  The alleged incident occurred on January 19, 2018, and the Amended Complaint was filed on June 12, 2020.  Plaintiff argues, however, that because the original Complaint was filed on January 9, 2020, within the two-year statute of limitations, and these Defendants had notice of the suit, the Amended Complaint relates back to the date of filing of the original Complaint under Federal Rule of Civil Procedure 15(c).  However, the Court disagrees that these Defendants had notice of the original suit, and consequently the Motions for Summary Judgment on all claims will be granted.

**A.  Plaintiff's Section 1983 Claims and Pennsylvania State Law Claims of Assault and Battery and Intentional Infliction of Emotional Distress**

Defendants contend that Plaintiff's claims in Count I (excessive force, false detention, false arrest or false imprisonment under Section 1983) should be dismissed along with Count II (assault and battery under Pennsylvania law) and Count III (intentional infliction of emotional distress under Pennsylvania law) because when viewing the facts in the light most favorable to Plaintiff, as the non-moving party, the elements of these claims have not been established.  In addition, Defendants also assert that they are entitled to qualified immunity on the Section 1983 claims.  The Court agrees that, when viewing the facts in the light most favorable to the Plaintiff, the claims of false detention, false arrest and false imprisonment fail because the evidence does not support these

claims.  But, using the same standard, Plaintiff has established the elements of excessive force, assault and battery, and intentional infliction of emotional distress.  Moreover, Defendants are not entitled to qualified immunity on the excessive force claim.

      **1.   Plaintiff Has Established a Claim for Excessive Force Under Section 1983, But Has Not Established Claims for False Detention, False Arrest or False Imprisonment**

First, in Count I, Plaintiff alleges under Section 1983 claims of use of excessive force, false detention, false arrest and false imprisonment.  Defendants move for Summary Judgment, arguing that the Section 1983 claims should be dismissed.  As noted, the Court agrees that Plaintiff's claims for false detention, false arrest and false imprisonment fail, but disagrees on Plaintiff's excessive force claim.  Plaintiff has established a claim for excessive force under Section 1983.

      **a.   Plaintiff Fails to Establish Claims of False Detention, False Arrest or False Imprisonment**

The claims of false detention, false arrest and false imprisonment alleged in Count I will be considered first.  "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citations omitted).   Similarly, "[t]o state a claim for false imprisonment, a plaintiff must establish: (1) that he was detained; and (2) that the detention was unlawful."  Glaspie v. Cnty. of Gloucester, No. CV157691RBKAMD, 2018 WL 4179461, at *4 (D.N.J. Aug. 31, 2018) (citing Wallace v. Kato, 549 U.S. 384, 389 (2007)).  "To make out either a false arrest or false imprisonment claim, [a Plaintiff needs] to demonstrate that his arrest was unsupported by probable cause."  White v. Andrusiak, 655 F. App'x 87, 90 (3d Cir. 2016) (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)). Notably, "[s]ince false arrest and false detention are 'species' of false imprisonment, those claims

are appropriately considered together as false imprisonment." Sarin v. Magee, 333 F. Supp. 3d 475, 479 (E.D. Pa. 2018) (citing Wallace v. Kato, 549 U.S. 384, 388-89 (2007)).

Moreover, briefly detaining an individual during the execution of a search warrant at a residence is not a seizure in violation of the Fourth Amendment. The Supreme Court in Michigan v. Summers stated:

> If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

452 U.S. 692, 704–05 (1981). Similarly, the Supreme Court in Los Angeles Cnty., California v. Rettele stated: "In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." 550 U.S. 609, 614 (2007). In Rettele, officers obtained a warrant authorizing them to search two homes for suspects, documents, and computer files. Id. at 610. During the execution of the search warrant, officers ordered residents out of bed and to dress at gunpoint and detained the residents of the home by seating them on the living room couch for a few minutes. Id. at 611. Officers later realized the residents were not the suspects listed on the warrant and let them go. Id. at 611-12. Under these circumstances, the Fourth Amendment was not violated. Id. at 615-16. Likewise, courts in the Third Circuit have held that "[a] seizure of the occupant of a house is reasonable during the execution of a search warrant in that house 'to protect the police, to prevent flight, and generally to avoid dangerous confusion.'" Bryant v. City of Philadelphia, 890 F. Supp. 2d 591, 599 (E.D. Pa. 2012), aff'd 518 F. App'x 89 (3d Cir. 2013) (citing Baker v. Monroe Tp., 50 F.3d 1186, 1191 (3d Cir. 1995) (further citations omitted)).

Here, a warrant was issued permitting Defendants to search the Apartment.  (Doc. No. 40, Ex. DSMH 7.)  The validity of the search warrant is not challenged.  The evidence shows that Plaintiff was detained by police, albeit in handcuffs, for about one hour while the Apartment was searched, and then he was released.  Plaintiff points to no evidence that he was ever arrested or imprisoned.  He was merely handcuffed because of his resistance in the bathroom and seated on the couch for under an hour while officers executed the search warrant, a permissible detention during the execution of a court-authorized search.  Therefore, Plaintiff's claims of false arrest and false imprisonment fail because Plaintiff was never arrested or imprisoned.  Further, Plaintiff's claims of false detention fail because Defendants did not act unreasonably in temporarily detaining Plaintiff by placing him in handcuffs and seating him on the couch for about one hour while they executed a search warrant.  In any event, he resisted and gave the officers cause to detain him during the search for their own safety.  Defendants did not act unreasonably because they are permitted to secure the premises for their safety, prevent flight, and avoid dangerous situations while they conduct a search for contraband pursuant to a warrant.  Therefore, Defendants are entitled to summary judgment on these claims.

### b.  Plaintiff Has Established a Claim for Use of Excessive Force

Next, the Court turns to Plaintiff's claim for use of excessive force alleged in Count I.  The Third Circuit has explained that:

> The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 395 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).  In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Carswell, 381 F.3d at 240 (quoting Graham, 490 U.S. at 396) . . .
>
> In evaluating reasonableness, the court must take into consideration the fact that "police officers are often forced to make split-second judgments – in circumstances

> that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." Id. at 396.

Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006).

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that officers in Defendants Benozich, Scanlan, Montgomery and Honicker's position were not justified in applying the amount of force used when attempting to restrain Plaintiff in the bathroom during the execution of the search warrant. When the officers entered the bathroom, Plaintiff was standing inside a small bathroom with his hands up. He had not committed any crime, nor did he pose a threat to the officers. Defendants, however, entered and knocked him backwards into the bathtub with a shield, pulled him out of the bathtub and threw him to the ground where they kicked him and tasered him. A jury crediting Plaintiff's version of the facts could find that initially he was not resisting or evading arrest and that Defendants actions were more than was necessary to control the premises during the execution for the search warrant. Plaintiff has therefore established a claim of excessive force under Section 1983.

### 2. Defendants Are Not Entitled to Qualified Immunity on Plaintiff's Remaining Excessive Force Claim

Defendants contend that they are entitled to qualified immunity on Plaintiff's Section 1983 excessive force claim (Count I). Plaintiff submits that Defendants used excessive force when they knocked him into the bathtub with a shield, threw him to the ground, kicked him in the face, and tasered him while a search warrant for the apartment was being executed.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Clark v. Coupe, 55 F.4th 167, 178 (3d Cir. 2022) (quoting Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (further citations omitted)). To determine

whether Defendants are entitled to qualified immunity, courts "engage in a two-part analysis: (1) whether the plaintiff sufficiently alleged a right had been violated, and (2) whether that right was clearly established when it was allegedly violated to the extent 'that it would have been clear to a reasonable person that his conduct was unlawful.'"  Clark, 55 F.4th at 178.  "An answer in the negative to either prong entitles an officer to qualified immunity," and "[c]ourts may begin their inquiry with either prong."  Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021).

Turning now to the two-part analysis, prong one is satisfied because Plaintiff has shown at the Motion for Summary Judgment stage that his Fourth Amendment right to be free from excessive force was violated.[5]  Next, the Court will turn to the second prong of the qualified immunity analysis: whether Plaintiff's right was clearly established when it was allegedly violated on January 19, 2018.  Regarding the second prong, the Third Circuit has explained:

> "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 248 (3d Cir. 2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted).  "The ultimate question is whether the state of the law when the offense occurred" gave [the government officials] "fair warning" that their conduct violated [the plaintiff's constitutional rights.  Id. at 247 (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

Clark, 55 F.4th at 181.  However, "'precise factual correspondence' between the case at issue and a previous case" is not required.  Peroza-Benitez, 994 F.3d at 166 (quoting Kopec v. Tate, 361 F.3d 772, 778 3d Cir. 2004)) (citation omitted).

Based upon the evidence submitted and viewing the facts in the light most favorable to Plaintiff, the constitutional right at issue here is: the right to be free from excessive force arising from Defendants actions in using a shield to knock him into a bathtub causing him to hit his head,

---

[5] Because the Court analyzed Plaintiff's excessive force claim in Section A(I)(b) above, we need not discuss it here as well.

14

throwing him to the ground and then kicking and tasering him while he was already on the ground under the apparent control of several officers. Defendants participated in these acts. Plaintiff has shown that this right was clearly established as of January 19, 2018. See, e.g., Gulley v. Elizabeth City Police Dep't, 340 F. App'x 108, 110 (3d Cir. 2009) (finding that beating a suspect in the face and head while they are lying down constituted excessive force and qualified immunity should not be granted); Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); Noble v. City of Camden, 112 F. Supp. 3d 208, 228-29 (D. N.J. 2015) ("At the time Defendants acted, the law was clear that beating an unarmed suspect who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force."). Therefore, Defendants are not entitled to qualified immunity on Plaintiff's remaining excessive force claim.

### 3. Plaintiff Has Established the Elements of Assault and Battery Under Pennsylvania State Law

Next, in Count II, Plaintiff alleges a claim of assault and battery under Pennsylvania state law. Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). "An assault requires both the actor's intent to place the individual in imminent apprehension of harmful or offensive contact and the individual's actual imminent apprehension." Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 365–66 (E.D. Pa. 2006). Moreover, "battery is defined as an intentional 'harmful or offensive contact with the person of another.'" Martin-McFarlane v. City of Philadelphia, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017). In performing their duties,

"reasonableness of the force used . . . determines whether the police officer's conduct constitutes an assault and battery." Renk, 641 A.2d at 293-94.

Here, viewing the facts in the light most favorable to Plaintiff as the nonmoving party, Plaintiff has established the elements of assault and battery under Pennsylvania law. Plaintiff alleges that he was knocked backwards by a shield into the bathtub by Defendant Benozich. Plaintiff further submits that he was pulled out of the bathtub and thrown to the ground. While Plaintiff was on the ground, officers put a knee on his back and kicked him in the face. Defendant Honicker tased Plaintiff for two seconds. Defendant Scanlan assisted the officers as they tried to place handcuffs on Plaintiff. All these facts create genuine issues of material fact as to whether Defendants' conduct constituted assault and battery. Consequently, Defendants are not entitled to summary judgment on this claim.

### 4. Plaintiff Has Established the Elements of Intentional Infliction of Emotional Distress Under Pennsylvania State Law

Next, in Count III, Plaintiff alleges a claim of intentional infliction of emotional distress under Pennsylvania law. Under Pennsylvania law, the elements for intentional infliction of emotional distress are: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." Smith v. RB Distribution, Inc., 515 F. Supp. 3d 311, 315 (E.D. Pa. 2021) (citing Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), aff'd 720 A.2d 745 (Pa. 1998)). "Extreme and outrageous conduct constitutes behavior 'beyond all possible bounds of decency,' 'atrocious,' and 'utterly intolerable in a civilized community.'" Smith, 515 F. Supp. 3d at 315 (citations omitted). "Pennsylvania courts also require a plaintiff asserting a claim for intentional infliction of emotional distress to provide evidence of a physical injury caused by the defendant's conduct." Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014).

Here, viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact on the elements for intentional infliction of emotional distress. Plaintiff submits that he was knocked backwards into the bathtub hitting his head, thrown to the ground, kicked, and tasered by Defendants while they were executing a search warrant at the Apartment. Moreover, he alleges that he asked Defendants to take him to the hospital, but they did not do so. After Defendants left the Apartment, Plaintiff's girlfriend drove him to the hospital where he was diagnosed with a closed displaced left orbital floor fracture and a fracture of the medial aspect of the left orbit, among other injuries. On August 16, 2018, Plaintiff was diagnosed with Posttraumatic Stress Disorder.

Viewing the evidence in the light most favorable to Plaintiff, his allegations of excessive force are extreme, outrageous, and intentional for the purposes of intentional infliction of emotional distress. Rosembert, 14 F. Supp. 3d at 645-46. Moreover, Plaintiff alleges both that he suffered physical injuries as a result of Defendants' conduct, and that Defendants' actions caused severe emotional distress. Therefore, Plaintiff has raised a genuine dispute of material fact on this claim, and for this reason, Defendants are not entitled to summary judgment.

## B.  Statute of Limitations

Next, the Court must decide whether Plaintiff's claims against the four Defendants are barred by the statute of limitations. As noted above, Plaintiff alleges in his Complaint three claims against them: 1) a Fourth Amendment violations under Section 1983[6] (Count I); 2) assault and battery under Pennsylvania state law (Count II); and 3) intentional infliction of emotional distress under

---

[6] The Fourth Amendment claims as alleged in Count I consists of the use of excessive force, false detention, false arrest and false imprisonment. Even though the claims under Section 1983 for false detention, false arrest and false imprisonment are being dismissed against the four Defendants because Plaintiff has failed to establish the pertinent elements, they still would be dismissed for violation of the two-year statute of limitations.

Pennsylvania state law (Count III).  (Doc. No. 9.)  The statute of limitations for all three claims is

two years.  See Harris v. Stash, No. 22-1910, 2023 WL 1990531, at *2 (3d Cir. Feb. 14, 2023)

("The statute of limitations for civil rights suits under § 1983 in Pennsylvania is two years");

Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003) ("[S]tate law claims for assault

and battery and intentional infliction of emotional distress also are governed by a two-year statute

of limitations.").

Federal Rule of Civil Procedure 15 allows Plaintiff to add new parties to a timely commenced

action outside of the statute of limitations if the amended pleadings "relate[] back to the date of

the original pleading."  Fed. R. Civ. P. 15.  Federal Rule of Civil Procedure 15(c) states in pertinent

part:

> (c) Relation Back of Amendments.
>     (1) *When an Amendment Relates Back.* An amendment to a pleading relates
>     back to the date of the original pleading when:
>         (A) the law that provides the applicable statute of limitations allows
>         relation back;
>         (B) the amendment asserts a claim or defense that arose out of the
>         conduct, transaction, or occurrence set out--or attempted to be set
>         out--in the original pleading; or
>         (C) the amendment changes the party or the naming of the party
>         against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and
>         if, within the period provided by Rule 4(m) for serving the summons
>         and complaint, the party to be brought in by amendment:
>             (i) received such notice of the action that it will not be
>             prejudiced in defending on the merits; and
>             (ii) knew or should have known that the action would have
>             been brought against it, but for a mistake concerning the
>             proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A)-(C).

"Notice is the 'linchpin' of Rule 15(c)."  Colbert v. City of Philadelphia, 931 F. Supp. 389, 392

(E.D. Pa. 1996) (citing Schiavone v. Fortune, 477 U.S. 21, 31 (1986)).  "Notice" may be actual or

constructive, and Rule 15(c) "does not require actual service of process on the party sought to be

added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 195 (3d Cir. 2001). However, "the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." Singletary, 266 F.3d at 195 (3d Cir. 2001). Further, "[t]he parties to be brought in by amendment must have received notice of the institution of the action within [90] days following the filing of the action, the period provided for service of the complaint by Rule 4(m) of the Federal Rules of Civil Procedure." Garvin, 354 F.3d at 220. If the notice requirement of Rule 15(c) is satisfied and "the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." Id. at 220.

If a plaintiff cannot show that the defendant received actual notice within 90 days of the filing of the original complaint, the Third Circuit has identified two methods by which notice may be imputed to Defendants under Rule 15(c): 1) the "shared attorney" method; and 2) the "identity of interest" method. First, the shared attorney method is satisfied "when an originally named party and the party who is sought to be added are represented by the same attorney." The rationale behind this rule is that "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Singletary, 266 F.3d at 196. For notice to be imputed under this method, it is required that the "attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the [90] day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." Id. at 196–97.

19

Second, notice also may be imputed to the defendant through the "identity of interest method." "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Garvin, 354 F.3d at 223 (citing Singletary, 266 F.3d at 197). The Third Circuit has held that under the identity of interest method, absent circumstances showing notice was actually received, "a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee." Singletary, 266 F.3d at 200. More specifically, the Third Circuit has noted that "individual police officers sought to be added . . . certainly qualify as non-managerial employees" and "do not share a sufficient nexus of interests with their employer" to impute notice under the identity of interest method. Garvin, 354 F.3d at 227.

### 1. Plaintiff's Amended Complaint Naming Defendants Scanlan, Montgomery, and Honicker Does Not Relate Back to the Date of the Original Complaint

Plaintiff's Amended Complaint naming County Task Force members Scanlan, Montgomery and Honicker as Defendants does not relate back to the original Complaint. There is no evidence in the record that Defendants Scanlan, Montgomery and Honicker received actual or constructive notice of Plaintiff's filing of the original complaint as required by Rule 15(c). As noted above, to relate back to the date of the original complaint, Rule 15(c) requires that Defendants have actual or constructive notice of the suit within the ninety (90) day period set forth in Federal Rule of Civil Procedure 4(m) for serving the summons and the original complaint.

Here, there is no evidence in the record showing Defendants Scanlan, Montgomery and Honicker received actual notice of the suit. In fact, Defendants were not served by Plaintiff until March 16, 2021 (Doc. Nos. 29 and 30), more than fourteen (14) months after the filing of the

original Complaint, and more than nine (9) months after the filing of the Amended Complaint[7] (Doc. No. 9.)  No evidence has been presented by Plaintiff that shows Defendants had actual notice that Plaintiff initiated this suit until well beyond the ninety (90) days provided for by Rule 4(m) and Rule 15(c).

Moreover, there is no evidence in the record showing constructive notice to these Defendants through either 1) the "shared attorney" method or 2) the "identity of interest" method. First, Defendants Scanlan, Montgomery and Honicker are not and have never been represented by the same counsel as the originally named Defendant, the City of Chester.  Therefore, notice may not be imputed through the shared attorney method.  Second, Defendants Scanlan, Montgomery and Honicker do not share an identity of interest with the originally named Defendant, City of Chester.  Defendants Scanlan, Montgomery and Honicker are not employed by the City of Chester. Consequently, any knowledge the City of Chester had regarding Plaintiff's filing of this suit cannot be imputed to Defendants.  Accordingly, when viewing the evidence presented in the light most favorable to Plaintiff as the non-moving party, he has failed to establish the relation back elements of Rule 15(c)(1)(C)(i)-(ii).

### 2. Plaintiff's Amended Complaint Naming Defendant Benozich Does Not Relate Back to the Date of the Original Complaint

Plaintiff's Amended Complaint naming Defendant Benozich as a Defendant in this case also does not relate back to the original Complaint.  There is no evidence in the record that Defendant Benozich received actual or constructive notice of Plaintiff's filing of the original Complaint within the time required by Rule 15(c).

---

[7] Plaintiff filed the original Complaint on January 9, 2020.  (Doc. No. 1.)  Plaintiff filed the Amended Complaint on June 12, 2020.  (Doc. No. 9.)

Plaintiff has not produced evidence that shows Defendant Benozich had actual notice of the suit within ninety (90) days of its filing, which is required to relate back to this date under Rule 15(c). In fact, Defendant Benozich first became aware of the suit on September 15, 2020, approximately eight (8) months after the filing of the original complaint. (Doc. No. 41 ¶ 8.)

In addition, Plaintiff has not shown that Defendant Benozich had constructive notice of the suit through either the shared attorney method or the identity of interest method. First, Plaintiff points to no evidence that Defendant Benozich shared an attorney with the originally named Defendant, City of Chester. In this regard, Plaintiff basically relies on the assumption that counsel for the City of Chester would represent the Officer Defendants as well, but no evidence supports this assumption. (Id. at 8.)

Plaintiff points to a series of emails with Counsel for the City of Chester to support his assertion. (Doc. 44-1, Ex. P-6.) However, the emails dated June 10, 2020 only show that Counsel for the City of Chester had not spoken to the Officer Defendants at the time the emails were exchanged, did not know if he would be retained to represent them, and that it appeared "Delaware County" officers interacted with Plaintiff.[8] (Id.) Second, Plaintiff has not presented any evidence showing that Defendant Benozich shared an identity of interest with the originally named Defendant, the City of Chester. In fact, the Third Circuit has found that rank and file police officers do not share an identity of interest with their city employers. See Garvin v. City of Philadelphia, 354 F.3d 215, 227 (3d Cir. 2003). As noted in Garvin, the Third Circuit stated:

> The individual police officers sought to be added to this action certainly qualify as non-managerial employees. Inasmuch as they do not share a sufficient nexus of interests with their employer, the City, the district court correctly held that it could

---

[8] In an earlier email dated May 20, 2020, counsel for the City of Chester indicated he would "need to check with each officer named" regarding whether he could waive service. (Doc. 44-1, Ex. P-7.) However, later emails dated June 10, 2020 clarify that Counsel had not been retained to represent the individual officers, nor had he spoken to them. (Doc. 44-1, Ex. P-6.)

not impute notice for purposes of [Rule 15(c)] under the identity of interest method. The individual police officers here have positions in the employment structure similar to that of the staff psychologist the plaintiff sought to add as a defendant in <u>Singletary</u> as they are "not highly enough placed in the [city] hierarchy for us to conclude that [their] interests as ... employee[s] are identical to the [city's] interests." <u>Id.</u> at 199.

<u>Id.</u> at 227.

Finally, Plaintiff claims that he only received the identities of the officers on June 10, 2020, a few days before the court ordered deadline to file the Amended Complaint. (Doc. No. 44 at 7.) Plaintiff further alleges that COVID-19 "wreaked havoc" with service of summons.  (<u>Id.</u> at 8.) However, Plaintiff provides no evidence that service could not have been made sooner. Accordingly, when viewing the evidence presented in the light most favorable to Plaintiff, he also has failed to establish the elements of Rule 15(c)(1)(C)(i)-(ii) as it relates to Defendant Benozich. Consequently, because the two-year state of limitations was violated as to these remaining individual Defendants, their Motions for Summary Judgment will be granted and judgment will be entered in their favor.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. Nos. 40, 42) will be granted.  An appropriate Order follows.